**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

In Re: Commonwealth's Motion to Appoint
Counsel Against or Directed to Defender
Association of Philadelphia, Respondent,

Filed In

COMMONWEALTH OF PENNSYLVANIA,

v.

KEVIN DOWLING.

CIVIL ACTION NO. 1:13-CV-510

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is the Community Defender Organization, Eastern District of Pennsylvania's (the "FCDO")[1] Motion for Reconsideration (Doc. 44) of the August 16, 2013 Memorandum and Order granting the Commonwealth of Pennsylvania's (the "Commonwealth") Motion to Remand and denying as moot the FCDO's Motion to Dismiss. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia, Respondent, Filed In Commonwealth v. Dowling*, No. 13-CV-510, 2013 WL 4458848 (M.D. Pa. Aug. 16, 2013) (hereinafter *Dowling*). Because the FCDO fails to establish the need to correct a clear error of law, the motion for reconsideration will be denied.

## **I. Background**

As the relevant facts are set forth in the August 16, 2013 Memorandum, they will not be repeated at length herein. *See generally Dowling*, 2013 WL 4458848, at *1-4. For

---

[1] The named movant Defender Association of Philadelphia's Federal Court Division is a Community Defender Organization within the meaning of 18 U.S.C. § 3006A(g)(2)(B). The Federal Court Division of the Defender Association of Philadelphia is often referred to as the FCDO. The FCDO is not a juridical entity, but rather is a subunit of the named movant, Respondent Defender Association of Philadelphia, which is a non-profit organization that provides legal representation to indigent criminals in state and federal courts.

purposes of resolving the instant motion for reconsideration, it is sufficient to note that the underlying proceeding in this action, the Commonwealth's Motion to Appoint Counsel, was filed in Kevin Dowling's ("Mr. Dowling") pending Post Conviction Relief Act ("PCRA") proceedings challenging his conviction and sentence of death. *See id*. Although styled as a request to appoint counsel, Mr. Dowling is currently represented in the PCRA proceedings by the FCDO. Thus, in actuality, the Motion to Appoint Counsel requests a hearing to determine whether the FCDO can continue to represent Mr. Dowling in his PCRA proceedings in light of the Pennsylvania Supreme Court's per curiam order in the PCRA case of *Commonwealth v. Mitchell*, No. 617 CAP.

The FCDO removed the Commonwealth's Motion to Appoint Counsel to this Court pursuant to 28 U.S.C. § 1442. Subsequently, the Commonwealth filed a motion to remand and the FCDO filed a motion to dismiss. On August 16, 2013, I granted the Commonwealth's motion to remand on the basis that the FCDO failed to establish that it "act[s] under" a federal officer for purposes of § 1442(a)(1). *See Dowling*, 2013 WL 4458848, at *14. As a result, the FCDO's motion to dismiss was denied as moot. *See id*.[2]

---

[2] Several other similarly situated proceedings have been removed by the FCDO to federal court. I have remanded two of these proceedings to state court. *See In re Commonwealth's Request for Relief Against or Directed to Defender Association of Philadelphia, Respondent*, Filed in *Commonwealth v. Dick*, No. 13-CV-561, 2013 WL 445885 (M.D. Pa. Aug. 16, 2013) (hereinafter *Dick*); *In re Proceedings Before the Court of Common Pleas of Monroe County, Pa., to Determine Propriety of State Court Representation by Defendant Association of Philadelphia, Filed in Commonwealth v. Sepulveda*, No. 13-CV-511, 2013 WL 4459005 (M.D. Pa. Aug. 16, 2013) (hereinafter *Sepulveda*). One action remains pending before me in this Court. *See In re Commonwealth of Pennsylvania's Rule to Show Cause*, Filed in *Commonwealth v. Housman*, No. 13-CV-2103 (hereinafter *Housman*). In three proceedings in the United States District Court for the Eastern District of Pennsylvania, the Commonwealth's motion to remand was denied and the FCDO's motion to dismiss was granted. *See In re Proceeding Before the Court of Common Pleas of Philadelphia County to Determine the Propriety of the Defender Association of Philadelphia's Representation of*

The FCDO filed a motion for reconsideration of the August 16, 2013 Memorandum and Order on August 20, 2013, (Doc. 44), and a brief in support on August 26, 2013. (Doc. 45.) The Commonwealth filed a timely brief in opposition. (Doc. 47.) The motion for reconsideration is now ripe for disposition.

## II. Legal Standard

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight (28) days of entry. Fed. R. Civ. P. 59(e). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "[R]econsideration

---

*William Johnson in Commonwealth v. Johnson*, No. 13-2242, 2013 WL 4774499 (E.D. Pa. Sept. 6, 2013) (hereinafter *Johnson*); *In re Commonwealth's Motion to Appoint New Counsel Against or Directed to Defender Association of Philadelphia, Commonwealth v. Harris*, No. 13-62, 2013 WL 4501056 (E.D. Pa. Aug. 22, 2013) (hereinafter *Harris*); *In re Proceeding in Which the Commonwealth of Pennsylvania Seeks to Compel the Defender Association of Philadelphia to Produce Testimony and Documents and to Bar it from Continuing to Represent Defendant Mitchell in State Court*, No. 13-cv-1871, 2013 WL 4193960 (E.D. Pa. Aug. 15, 2013) (hereinafter *Mitchell*) (collectively, the "Eastern District Cases"). To date, appeals have been filed in *Dowling*, *Dick*, *Sepulveda*, *Johnson*, and *Mitchell*.

3

motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, No. 05 1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

### III. Discussion

At issue in the instant motion for reconsideration is the federal officer removal statute, 28 U.S.C. § 1442. The statute provides, in pertinent part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. . . .

28 U.S.C. § 1442(a)(1) (2013). Jurisdiction under § 1442(a)(1), according to the Third Circuit, requires that:

> a defendant . . . must establish that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 109 S. Ct. 959, 965, 103 L. Ed. 2d 99 (1989); *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S. Ct. 1813, 1817, 23 L. Ed. 2d 396 (1969)).

In the August 16, 2013 decision, I determined that the FCDO failed to establish jurisdiction pursuant to § 1442(a)(1). *See generally Dowling*, 2013 WL 4458848, at *12-14. In that Memorandum, I concluded that the FCDO was a "person" within the meaning of the statute, and I further assumed that the third and fourth *Feidt* factors, the colorable federal

4

defense and causal nexus inquiries, respectively, were satisfied. *See id.* at *5-6. Nevertheless, the proceeding was remanded to the Court of Common Pleas because the FCDO failed to establish the "acting under" requirement for federal officer removal. I reasoned:

> [E]ven if the FCDO is "acting under" a federal officer in the course of its representation of clients in federal court, it does not follow that it also "act[s] under" a federal officer in its performance of tasks for which the Government bears no responsibility, such as appearing in state post-conviction capital proceedings to exhaust claims for federal habeas review. Indeed, "[c]ritical under the statute is to what extent defendants acted under federal direction *at the time they were engaged in the conduct now being sued upon.*" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 125 (2d Cir. 2007) (emphasis added) (noting that the "acting under" and causal connection considerations tend to collapse into a single requirement and stating that "removal will not be proper where a private party establishes only that the acts complained of were performed under the 'general auspices' of a federal officer."); *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 635 (D. Del. 2008).

*Id.* at *12.

The FCDO seeks reconsideration of this determination. According to the FCDO, this analysis collapsed the "acting under" and causal nexus requirements for federal officer removal into a single inquiry. The result, the FCDO argues, was "stiffening the 'acting under' requirement by demanding a showing of nexus between the FCDO's state court litigation and its federal contract," which had the impact of denying effect to the 2011 amendments to § 1442(a)(1). (Doc. 45, 10.) Essentially, the FCDO asserts that its investigation and research of claims while appearing in PCRA proceedings should be analyzed as part of the "for or relating to any act under color of [federal] office" inquiry.

Because the FCDO's motion for reconsideration addresses both the "acting under" and causal nexus requirements under *Feidt*, and because I only assumed the causal nexus inquiry was satisfied in my prior decision, they will both be discussed herein. Under Supreme Court precedent, to satisfy the "acting under" requirement of § 1442(a)(1), a private person's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 146, 127 S. Ct.

5

2301, 168 L. Ed. 2d 42 (2007) (emphasis omitted). The *Watson* Court also distinguished between private contractors doing business in areas that are subject to intense regulation, which could not remove an action under § 1442(a)(1) on that basis alone, with private contractors under close supervision by the federal government, which could:

> The answer to this question lies in the fact that the private contractor in such cases is helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. In the context of *Winters*, for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war. Moreover, at least arguably, Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.
>
> These circumstances distinguish *Winters* from this case. For present purposes that distinction is sufficient. And we need not further examine here (a case where private contracting is not at issue) whether and when particular circumstances may enable private contractors to invoke the statute.

*Id*. at 153-54, 127 S. Ct. 2301 (referring to *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)).

To satisfy the nexus requirement, on the other hand, the removing party must demonstrate a "'causal connection' between the charged conduct and asserted official authority." *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969) (quoting *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33, 46 S. Ct. 185, 70 L. Ed. 449 (1926)).

> "There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty. But the statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."

*Mesa v. California*, 489 U.S. 121, 131-32, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989) (quoting *Soper (No. 1)*, 270 U.S. at 33, 46 S. Ct. 185). "Translated to non-governmental corporate defendants," this standard, according to the Second Circuit, requires such entities to

"demonstrate that the acts for which they are being sued . . . occurred because of what they were asked to do by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis omitted).

A.  **The Eastern District Cases Do Not Provide a Basis for Reconsideration.**

Underlying the FCDO's motion is the suggestion that I reconsider my prior decision in light of the Eastern District Cases. Reconsideration on the basis of these decisions is not warranted. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even the same judge in a different case." *Camreta v. Greene*, - - - U.S. - - -, 131 S. Ct. 2020, 2033 n.7, 179 L. Ed. 2d 1118 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed. 2011)). Indeed, "the Opinions of other district courts are persuasive but not binding authority on this Court." *Kuhns v. City of Allentown*, 636 F. Supp. 2d 418, 437 (E.D. Pa. 2009); *see also Manley v. Horsham Clinic*, No. 00-4904, 2001 WL 894230, at *4 (E.D. Pa. Aug. 9, 2001) ("In matters concerning federal law a District Court is bound only by the decisions of the Court of Appeals for the Circuit in which it sits and by the decisions of the United States Supreme Court. I am not bound by the holdings of my fellow district court judges, . . ."). For the reasons identified in the August 16, 2013 Memorandum, in addition to those set forth herein, I find that the FCDO fails to satisfy the requirements for removal under § 1442(a)(1).

B.  **Courts in This Circuit and Other Circuits Often Consider the "Acting Under" and Causal Nexus Inquiries Jointly.**

Reconsideration is also not warranted with regard to the FCDO's argument that clear error occurred to the extent that the "acting under" analysis implicated the causal nexus inquiry. Courts in the Third Circuit routinely recognize the "acting under" and "causal nexus" requirements overlap. *See, e.g., Deuley v. DynCorp Int'l, Inc.*, 588 F. Supp. 2d 539, 542-43 (D. Del. 2009) ("these two *Feidt* elements 'tend to collapse into a single requirement: that

the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'"); *Parlin v. Dyn Corp. Int'l, Inc.*, 579 F. Supp. 2d 629, 635 (D. Del. 2008) (same); *Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 724 (E.D. Pa. 2008) (same); *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996) ("The 'acting under' language in the statute forces Westinghouse to show a causal nexus between the plaintiffs' claims and the conduct taken pursuant to direction from a federal officer."); *cf. Walkup v. Air & Liquid Sys. Corp.*, No. 12-1635, 2013 WL 5448623, at *2 (D. Del. Sept. 26, 2013) (to satisfy the "acting under" requirement, the removing party "must demonstrate that a 'federal office' was the source of the specific act for which the contractor now faces suit."). Courts outside of the Third Circuit frequently utilize this approach as well. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 125 (2d Cir. 2007); *Mellis v. Asbestos Corp.*, No. 13-3449, 2013 WL 4805746, at *1 (N.D. Cal. Sept. 9, 2013) (requirements for § 1442(a)(1) removal include that "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims"); *Leslie v. Maida Eng'g Inc.*, No. 13-CV-614, 2013 WL 2403849, at *2 (E.D. Mo. May 31, 2013) (same); *Levy v. A.O. Smith Water Prods. Co.,* 12 CIV 5152, 2012 WL 2878140, at *2 (S.D.N.Y. July 13, 2012) ("it must establish that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority."); *Breaux v. Gulf Stream Coach, Inc.*, No. 08-893, 2009 WL 152109, at *2 (E.D. La. Jan. 21, 2009); *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008). And, the private contractor case cited with approval by the Supreme Court in *Watson*, *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998), analyzed these two elements of the federal officer removal statute jointly. *See Legendre v. Anco Insulations, Inc.*, No. 12-94, 2012 WL 2064537, at *3 n.18 (M.D. La. May 14, 2012) (recognizing *Winters*

8

analyzed these two factors as one and noting "[t]he federal direction and causal nexus elements of federal officer removal overlap and can be considered together.").

**C.    The FCDO Fails to Satisfy § 1442(a)(1) Even Considering its State Court Representation Under the Causal Nexus Inquiry.**

According to the FCDO, if its appearance in the PCRA proceedings is analyzed pursuant to the "for or relating to any act under color of such office" requirement of § 1442(a)(1) rather than the "acting under" inquiry, it satisfies the requirements for federal officer removal. For the reasons that follow, even if the FCDO's representation of Mr. Dowling in state court is viewed under the former inquiry, it fails to make the necessary showing for removal under § 1442(a)(1).

As noted, to satisfy the "under color" of federal office requirement, the FCDO must demonstrate a "'causal connection' between the charged conduct and asserted official authority." *Willingham*, 395 U.S. at 409, 89 S. Ct. 1813 (quoting *Soper (No. 1)*, 270 U.S. at 33, 46 S. Ct. 185). This inquiry "requires the gravamen of the claim against [the removing party] occur while it acted under color of federal authority." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (noting the four requirements for removal under § 1442(a)(1), including that the removing party has "been sued 'for or relating to any act under color of such office'"). By way of example, the *Ruppel* court explained that this requirement establishes that "a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage- there must be a 'causal connection between the charged conduct and asserted official authority.'" *Id*. (quoting *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)). "[The FCDO] can satisfy this requirement if its relationship with [the non-removing party] 'derived solely from its official duties'" for the federal office. *Id*. (quoting *Willingham*, 395 U.S. at 409, 89 S. Ct. 1813); *see also Isaacson*, 517 F.3d at 137-38 ("To show causation, Defendants must only establish that the act that is the object of Plaintiff's attack . . . occurred while Defendants

9

were performing their official duties.").

The FCDO argues that this standard is satisfied in this case. Emphasizing the 2011 amendments to § 1442(a)(1), the FCDO asserts: "removal is authorized of an action that is merely 'relat[ed] to' any act under color of the defendant's federal office. While the argument is compelling that the Commonwealth seeks the FCDO's disqualification precisely for' its federal contract, it is indisputable that the disqualification proceeding is at least 'relat[ed] to' the FCDO's federal contract." (Doc. 45, 11-12 (footnote omitted).) Elaborating upon this argument, the FCDO maintains that "[w]hen in the setting of a PCRA proceeding the FCDO investigates and researches federal claims . . . it is surely 'related to' the federal habeas representation." (*Id*. at 13.) The FCDO further contends that "the research and investigation of federal claims undertaken in the PCRA proceeding is work that is essential to the preparation of the eventual federal habeas petition. . . . [Thus,] 'the aspect of its state court representation that is done in preparation of the federal habeas petition is permitted by § 3599, and is performed 'under color' of a federal office.'" (Doc. 45, 12 (quoting *Harris*, 2013 WL 4501056, at *4).[3]

First, I find no merit in the FCDO's claim that its federal contract constitutes an act under a federal officer. The federal contract is the source of the FCDO's relationship with the Federal Government, not an act under color of office.

Second, I am not convinced that the investigation and research of federal claims in Mr. Dowling's PCRA cases as preparation for federal habeas review occurred "under color"

---

[3] *Harris* and *Mitchell* seemingly find the causal nexus requirement of § 1442(a)(1) satisfied for different reasons. According to *Harris*, the FCDO's action "under color" of a federal office is the aspect of "state court representation that is done in preparation of the federal habeas petition." *Harris*, 2013 WL 4501056, at *4. *Mitchell*, conversely, indicates that the FCDO's acts "under color" of office are its "receiving federal grants to represent Mitchell in federal court," and its "status as a federal grantee." *Mitchell*, 2013 WL 4193960, at *10.

10

of federal office. Participation in the state proceeding is not necessary to preparation for the federal proceeding. Moreover, if deemed important, the FCDO can review the state filings to determine the issues raised therein and research and prepare in anticipation of them in the federal proceeding. Here again the requirements merge. It is not something the Federal Government provides and to argue it is related because it is the same or similar to the federal proceeding is suggesting too broad an application of "relating to." Parallel proceedings in federal and state courts while dealing with similar issues does not satisfy the "relating to" and therefore the "under color" of federal office criterion.

As set forth in greater detail in the August 16, 2013 Memorandum, under the Criminal Justice Act, federal district courts must place in operation a plan for furnishing representation to indigent criminal defendants. *See* 18 U.S.C. § 3006A(a). A district in which at least two hundred persons annually require the appointment of counsel may establish a "Federal Public Defender Organization," a "Community Defender Organization," or both. *See id*. at § 3006A(g)(1).

The Criminal Justice Act Plan for the United States District Court for the Middle District of Pennsylvania provides: "the federal public defender organization of the Middle District of Pennsylvania, previously established in this district pursuant to the provisions of the CJA, is hereby recognized as the federal public defender organization for this district." In comparison, the Criminal Justice Act Plan for the United States District Court for the Eastern District of Pennsylvania designates the FCDO as the Community Defender Organization to "facilitate the representation of persons entitled to appointment of counsel under the Criminal Justice Act."

Throughout the course of this and the related proceedings, the FCDO contended that federal community defender organizations are essentially identical to federal public defender organizations. In the FCDO's words, "[i]ndeed, there is no material, functional

11

difference between the federal defender and the community defender under 18 U.S.C. §§ 3006A(g)(2)(A) and (g)(2)(B)." (Doc. 29, 12.)

The fact that there is no "material, functional difference" between a community defender, such as the FCDO, and a federal defender, such as the Middle District Public Defender, indicates that the FCDO's research and investigation of federal claims undertaken in PCRA cases is not performed "under color" of a federal office. If such were the case and investigation of claims in PCRA cases is "essential to the preparation of the eventual federal habeas petition" as stated by the FCDO, (Doc. 45, 12), one would expect that the Middle District Public Defender would routinely appear in state PCRA cases to research and investigate federal claims. Yet, in all the filings submitted by the FCDO in this proceeding and the related proceedings in this Court, the FCDO has not identified a state PCRA case in which an attorney for the Middle District Public Defender organization appeared to research or investigate federal claims or to exhaust claims prior to federal review. Nor is the Court aware of any PCRA cases in which a Middle District Public Defender organization attorney appeared in the state court proceeding to research, investigate, or exhaust claims for federal habeas review. That the FCDO's "material, functional" equivalent does not appear in PCRA proceedings is strong support that the FCDO's relationship with the Commonwealth was not "derived solely from [its] official duties." *Willingham*, 395 U.S. at 409, 89 S. Ct. 1813.

A prior submission by the FCDO buttresses this conclusion. The FCDO states: "FCDO attorneys also appear on behalf of some of their federal clients in PCRA proceedings in Pennsylvania courts. They do so either on the authority of a federal court order to exhaust their client's state court remedies or as Pennsylvania-barred lawyers appointed by the PCRA court or retained by the defendant to represent him on a pro bono basis." (Doc. 17, 5-6.) Here, prior to appearing in the PCRA proceedings, the FCDO did not

obtain a federal court order appointing it as counsel to exhaust Mr. Dowling's claims in state court. Essentially, the FCDO, on its own, undertook the representation of Mr. Dowling in his PCRA proceedings. As a result, the action the Commonwealth challenges, the FCDO's representation of a PCRA petitioner in state court, did not naturally "occur[ ] during the performance of [its] government-specified duties," *Isaacson*, 517 F.3d at 138, nor result from its execution of its contract. *Cf. Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010) (execution of private contractor's contract with the FAA gave rise to alleged cross-contamination).

The 2011 amendments to § 1442(a)(1) do not mandate a different result. Previously, § 1442(a)(1) permitted removal "for any act under color of such office," but following the 2011 amendments, removal is now authorized "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1) (1996), *amended by* 28 U.S.C. § 1442(a)(1) (2011). As noted above, because the FCDO's "material, functional" equivalent, the Middle District Public Defender, does not appear in state post-conviction proceedings, when the FCDO appeared in Mr. Dowling's PCRA cases to investigate, research, and exhaust federal claims, one should not conclude it was "for or related" to its official duty of representing Mr. Dowling in his federal habeas proceeding. Moreover, any overlap between the claims presented in the petitioner's PCRA and federal habeas proceedings is the product of the interplay between state post-conviction and federal habeas litigation, rather than "for or related" to the FCDO's performance of its official duty. Therefore, the FCDO's investigation and research of federal claims while in the setting of Mr. Dowling's PCRA proceedings was not "for or related to any act under color" of the Administrative Office of the United States Courts.[4]

---

[4] Recently in *Housman*, the FCDO advanced the arguments that the removed proceeding contemplates the audit of the FCDO's expenditure of grant funds, and

13

Lastly, *Jefferson County v. Acker*, 527 U.S. 423, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999), does not compel the conclusion that the federal officer removal statute is satisfied in this proceeding. In that case, Jefferson County initiated a collection suit in Alabama small claims court against two federal judges that refused to pay the county's "license or privilege tax." *Id*. at 429, 119 S. Ct. 2069. The judges removed the action to federal district court under the federal officer removal statute, and the district court denied the county's motion to remand. *See id*. Ultimately, the Supreme Court granted certiorari to consider the merits of the case, as well as to address whether removal of the action to federal court was authorized by the federal officer removal statute. *See id*. at 430, 119 S. Ct. 2069.

The Court concluded that the judges made an adequate showing that the county's tax collection suit was "for an act under color of office." *Id*. at 432, 119 S. Ct. 2069 (quoting 28 U.S.C. § 1442(a)(3)). According to the Court, "[t]he county's lawsuit . . . was not simply 'for' a refusal [to pay the tax]; it was 'for' payment of a tax." *Id*. Reading the county's tax ordinance literally, the Court reasoned that the measure required the judges to pay the license fee prior to engaging in their occupation. *Id*. at 432-33, 119 S. Ct. 2069. Considering the circumstances that gave rise to the tax liability, which encompassed the judges holding court in the county and receiving income for that activity and not just the judges' refusal to pay the tax, constituted the basis of the tax collection lawsuits. *Id*. at 433, 119 S. Ct. 2069. And, based on these circumstances, the Court found the essential nexus between the judges' activity "under color of office" and the county's demand for payment of the local tax. *Id*.

---

that the accounting and expenditure of its funds is an act performed under the Administrative Office of the United States Courts. *See Housman*, No. 13-CV-2103 (M.D. Pa. Oct. 1, 2013), ECF No. 13, at 18. The gravamen of the removed proceeding, however, is the FCDO's appearance in the state PCRA case. Furthermore, the accounting and expenditure of funds are better characterized as conditions of the FCDO's funding grant as opposed to an "act under" the FCDO.

14

The circumstances in this case differ from those in *Jefferson County*. There, the action implicated the judges' "acts or their presence at the place in performance of their official duty"- the holding of court in Jefferson County. *Id*. at 433, 119 S. Ct. 2069 (quoting *Willingham*, 395 U.S. at 409, 89 S. Ct. 1813). Here, for the reasons previously identified, the relevant circumstance giving rise to the removed proceeding, *i.e.*, the FCDO's representation of a PCRA petitioner in state court, was not based on the FCDO's official duty. Furthermore, unlike the circumstances in *Jefferson County* which encompassed an act under color of office, the judges holding court in the county, the circumstance cited by the FCDO which it claims constitutes the basis of this proceeding, its federal contract, is not an act under the AO, but rather is the source of the FCDO's relationship with the Federal Government

Therefore, the FCDO fails to satisfy the requirements for removal under 28 U.S.C. § 1442(a)(1). Because the FCDO fails to establish a clear error of law, reconsideration of the August 16, 2013 Memorandum and Order granting the Commonwealth's Motion to Remand, denying the FCDO's Motion to Dismiss, and remanding the proceeding to the Court of Common Pleas is not warranted.

### IV. Conclusion

For the above stated reasons, the FCDO's motion for reconsideration will be denied.

An appropriate order follows.

October 25, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

15